UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHERMAN PEGROSS,

              Plaintiff,                 CIVIL ACTION NO. 07-12839

            v.                       DISTRICT JUDGE DAVID M. LAWSON

THE U.S. MARSHAL'S SERVICE      MAGISTRATE JUDGE VIRGINIA MORGAN
FOR THE EASTERN DISTRICT OF
MICHIGAN[1], THE WAYNE COUNTY
JAIL, COUNTY OF SANILAC,
COUNTY OF OAKLAND, THE
OAKLAND COUNTY JAIL TRANSPORT,
OFFICER M. DIAZ and OAKLAND
COUNTY JAIL SUPERVISOR CARNEY[2],

              Defendants.
_____/


## REPORT AND RECOMMENDATION

### I. Introduction

      This matter comes before the court on Defendant Sanilac County's Second Motion for

Summary Judgment (D/E #43), Defendant Wayne County Jail's Motion to Dismiss and for

Summary Judgment (D/E #46), and Defendant Oakland County and Officer M. Diaz's Motion

---

[1] The United States Marshal's Service was dismissed from this action by order of United
States District Court Judge David M. Lawson on August 10, 2007 (D/E #5).

[2] On December 11, 2008, Judge Lawson adopted a Report and Recommendation of this
Court and dismissed defendant Carney from this action due to a lack of personal involvement
(D/E #51).

for Summary Judgment (D/E #56). Plaintiff only filed a response to Oakland County and Diaz's

Motion for Summary Judgment (D/E #59) and the time for filing a response to the other two

motions has passed (D/E #45, #50). For the reasons discussed below, this court recommends

that defendants' motions be **GRANTED** and that all of plaintiff's remaining claims be

dismissed. Sanilac County and Oakland County are entitled to dismissal because plaintiff failed

to allege the existence of a policy, custom or practice causing a constitutional deprivation.

Wayne County Jail and Diaz are entitled to dismissal on the basis that plaintiff failed to exhaust

his administrative remedies against them prior to filing this lawsuit. The case would then be

closed.

## II. Background

### A. Complaint

On July 9, 2007, plaintiff filed a complaint against defendants pursuant to 42 U.S.C. §

1983 (D/E #1). In the complaint, plaintiff alleges that defendants violated plaintiff's rights under

the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. (Complaint, p.

3) Specifically, plaintiff alleges he was arrested by FBI agents on November 22, 2005, and that

defendants violated his rights over the next fourteen months while plaintiff was a pretrial

detainee. (Complaint, pp. 12, 41) Plaintiff asserts in the complaint that he is currently confined

in the Federal Correctional Institution in Milan, Michigan. (Complaint, p. 3) As relief, plaintiff

requests that defendants compensate him for their treatment of plaintiff, and the suffering that

resulted from that treatment, in the amount of at least $3,750.00 per day. Plaintiff also requests

fees, costs, and any other further relief the court may deem just and proper.  (Complaint, p. 42)

Plaintiff's specific allegations against each of the defendants will be described in turn.

**1. Allegations Involving Wayne County Jail**

According to the complaint, plaintiff was confined as a pretrial detainee at the Wayne

County Jail from November 22, 2005, to December 7, 2005; June 27, 2006, to August 25, 2006;

August 28, 2006, to October 30, 2006; December 18, 2006, to January 2, 2007; and January 8,

2007, to January 24, 2007.  (Complaint, pp. 2-3)  Plaintiff alleges that, when he was first

transferred to Wayne County Jail, he remained in a six feet by eight feet cell without windows or

a mattress for fifteen days without access to a telephone or any recreation.  (Complaint, pp. 12-

13)  Plaintiff also alleges that, when he was transferred to Wayne County Jail for a second time,

he was immediately denied access to the law library and life's basic necessities, such as a wash

cloth.  (Complaint, p. 15)  Plaintiff further alleges that, after plaintiff had a book confiscated on

June 28, 2006, deputies cut the power to the telephone and informed the other nine inmates in

plaintiff's unit that the loss of the telephone was plaintiff's fault.  (Complaint, p. 16)  According

to plaintiff, the deputies' actions caused the other inmates to threaten and curse plaintiff.

(Complaint, p. 16)

Plaintiff also alleges that, on June 30, 2006, deputies deliberately broke plaintiff's

toothbrush during a search of plaintiff's cell and that, after plaintiff complaint, they stated "Fuck

you" and left.  (Complaint, p. 17)  Plaintiff further alleges that he was moved to an adjacent

facility on July 1, 2006 and that the new facility was very cold.  (Complaint, p. 17)  According to

plaintiff, he was made to spend five or six days and nights "freezing with chills, miserable with

no blanket, and unable to function fully by day and deprived of sleep at night." (Complaint, p. 17)

Plaintiff further alleges that, on July 3, 2006, and July 5, 2006, he was forced to choose between using the law library, recreation and commissary. (Complaint, pp. 18, 20) Plaintiff also alleges that the law library at the Wayne County Jail lacked federal law books and materials, drafting instruments, qualified employees, and that the time allotted for inmates, thirty to forty-five minutes once per week, is insufficient. (Complaint, pp. 18-19)

Plaintiff also claims that, by July 4, 2006, he realized that he did not have a change of clothes, linen, a towel or washing powder, but that his subsequent complaints regarding those conditions were ignored. (Complaint, p. 19) Plaintiff further claims that, on August 28, 2006, he was placed in a cell, where the temperature was approximately 45 degrees Fahrenheit, with only a bath towel for a blanket and that the deputies ignored his complaints regarding the cold. (Complaint, pp. 24-25) According to plaintiff, other inmates gave plaintiff blankets the next night, but those other inmates also took plaintiff's meals as compensation. (Complaint, pp. 26-27)

Plaintiff also alleges that, on September 7, 2006, a Deputy Toth turned the other inmates against plaintiff by blaming plaintiff for Toth's lack of professionalism. (Complaint, pp. 27-28) Plaintiff further alleges that he was later moved to other cells, but he was transferred without the blankets he had acquired and both of those cells were heavily infested with vermin and insects. (Complaint, pp. 30-31)

-4-

Plaintiff also asserts that, on January 10, 2007, he was assaulted by a deputy, threatened by another deputy, and denied medical attention.  (Complaint, pp. 31-32)  Plaintiff further asserts that the deputy who assaulted plaintiff also threatened plaintiff the next day in order to silence plaintiff's complaint.  (Complaint, pp. 33-34)  Plaintiff also claims that, on January 15, 2007, he was improperly placed in the mental health ward and on suicide watch by a nurse and some deputies.  (Complaint, pp. 34-36)

### 2. Allegations Involving Sanilac County

Plaintiff alleges that he was confined in the Sanilac County Jail from December 7, 2005, to June 27, 2006.  (Complaint, pp. 2-3)  With respect to defendant Sanilac County, plaintiff alleges that, while he was confined there, he was only offered "cold cereal accompanied by a water-based, white food colored, milk replica" for breakfast while his lunch and dinners were unidentifiable.  (Complaint, p. 13)  Plaintiff also alleged that the deputies who served the meals often watched and laughed as the inmates forced themselves to eat.  (Complaint, p. 13)  Plaintiff further alleges that the law library was nothing more than  a computer and there was never anyone there to assist plaintiff.  (Complaint, pp. 13-14)  Plaintiff also alleges that, after he filed a grievance complaining about being deprived contact visits with his wife, he was told that Sanilac County Jail does not allow contact visits for federal pretrial detainees or county inmates. (Complaint, p. 14)  Plaintiff also asserts in his complaint that he filed a grievance complaining about being confined to a small cell for months without indoor and outdoor recreation, and that

he received a response stating that Sanilac County Jail does not have an outside recreation area. (Complaint, p. 14)

### 3. Allegations Involving Oakland County and Diaz

Plaintiff alleges that he was confined in the Oakland County Jail from August 23, 2006, to August 28, 2006.  (Complaint, pp. 2-3)  With respect to defendants Oakland County and Diaz, plaintiff alleges that, while being transferred from Wayne County Jail to Oakland County Jail on August 25, 2006, by defendant Diaz, Diaz directed profanity at plaintiff, struck plaintiff with a closed fist twice and used excessive force against plaintiff.  (Complaint, pp. 21-22)  According to plaintiff, while the pain subsided in four to six days, plaintiff remains emotionally distraught after the incident.  (Complaint, pp. 21-22)  Plaintiff also alleges that, while confined at the Oakland County Jail, he was forced to lie on concrete in an over-crowded holding area for four days and three nights and that being on the floor increased the pain from the injuries he suffered when Diaz assaulted him as well as bringing about new ailments.  (Complaint, pp. 22-24) According to plaintiff, he was laughed at when he requested relief and medical attention from the jail's staff and there were no effective procedures in place regarding the filing of complaints. (Complaint, pp. 22-24)  Plaintiff further alleges that he was transferred back to Wayne County Jail on August 26, 2006.  (Complaint, p. 24)

**B. Procedural History**

On November 12, 2008, defendant Sanilac County filed its second motion for summary judgment (D/E #43).[3]  In that motion, Sanilac County argues that it is entitled to summary judgment because plaintiff failed to exhaust his administrative remedies against it prior to filing this lawsuit and because no genuine issue of material fact exists as to whether defendant's policy of not allowing contact visits with federal pretrial detainees is unconstitutional.

Plaintiff was ordered to submit his response to Sanilac County's motion by December 22, 2008 (D/E #45), but no response has ever been filed.

On December 2, 2008, defendant Wayne County Jail filed its motion to dismiss and for summary judgment (D/E #46).  In that motion, Wayne County Jail argues that the claims against it should be dismissed or that it should be granted summary judgment on the basis that plaintiff failed to state claim upon which relief can be granted against Wayne County with respect to plaintiff's Fifth Amendment claim because Wayne County is not an entity of the federal government.  Wayne County Jail also argues that plaintiff failed to state a claim upon which relief can be granted because plaintiff did not allege that Wayne County had an unconstitutional policy, custom or practice that was the moving force behind an individual actor's conduct of

---

[3]In an earlier motion for summary judgment, defendant Sanilac County, then identified as Sanilac County Jail, argued that the Sanilac County Jail was not a entity that could be sued pursuant to § 1983, plaintiff failed to exhaust his administrative remedies, and plaintiff failed to allege a policy or custom that led to a constitutional violation (D/E #16).  In response to that motion, the Honorable David M. Lawson ordered that "Sanilac County" be substituted for "Sanilac County Jail" and that the complaint against defendant Sanilac County be dismissed as to all claims against that defendant except the claim that the policy of not allowing contact visits with federal pretrial detainees is unconstitutional (D/E #36).

depriving plaintiff a right secured by the United States Constitution.  Wayne County Jail further argues that it is entitled to judgment as a matter of law because plaintiff failed to produce any evidence of an unconstitutional policy, custom, or practice.  Wayne County Jail also argues that it is entitled to judgment as a matter of law because plaintiff failed to exhaust his administrative remedies against it prior to filing this lawsuit.

Plaintiff was ordered to submit his response to Wayne County Jail's motion by January 8, 2009 (D/E #50), but no response has ever been filed.

On February 17, 2009, defendants Oakland County and Diaz filed their motion for summary judgment (D/E #56).[4]  In that motion, Oakland County and Diaz argue that plaintiff failed to state a claim upon which relief can be granted against Oakland County because he failed to allege that Oakland County has an unconstitutional policy, practice or custom that deprived him of a right secured by the United States Constitution or federal law.  Oakland County and Diaz also argue that plaintiff's claims against Diaz are barred because plaintiff failed to exhaust his administrative remedies against Diaz prior to filing this lawsuit.

Plaintiff filed a response to Oakland County and Diaz's motion on March 25, 2009 (D/E #59).  In that response, plaintiff argues that he is unable to properly respond to the motion due to problems with vision, reading, and comprehension.  Plaintiff also argues that he does not

---

[4]Defendants Oakland County and Diaz were part of an earlier motion to dismiss (D/E #39).  In that motion, Oakland County, then identified as Oakland County Jail, and Diaz argued that the claims against them should be dismissed because they had not been served.  On December 11, 2008, Judge Lawson, adopting a Report and Recommendation of this Court, ordered that the "Oakland County" be substituted for "Oakland County Jail" and that the motion to dismiss be denied (D/E #51).

understand the complex legal issues raised in the motion and he has limited legal resources due to his incarceration.  Plaintiff requests that the Court deny Oakland County and Diaz's motion for summary judgment as well as granting him an extension of time so that he can be released from prison and seek professional counsel.

## III. Standard of Review

### A. Summary Judgment

Defendants all move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106

-9-

S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his

pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist.

Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575,

1592 (1968)).

### B. Fed. R. Civ. P. 12(b)(6)

Defendant Wayne County Jail also moves for dismissal pursuant to Fed. R. Civ. P.

12(b)(6).  Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed for "failure to

state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion, "factual

allegations contained in a complaint must raise a right to relief above the speculative level.

Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation

marks omitted).  That does not "require heightened fact pleading of specifics, but only enough

facts to state a claim to relief that is plausible on its face"  Bell Atl. Corp. v. Twombly, 550 U.S.

544, __127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  See also CBC Companies, Inc. v.

Equifax, Inc., 561 F.3d 569, 571 (6th Cir. 2009).  In its review, the court must construe the

complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all

reasonable inferences in favor of the plaintiff.  Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th

Cir. 2007); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005).  The court "may consider

the Complaint and any exhibits attached thereto, public records, items appearing in the record of

-10-

the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett, 528 F.3d at 430.

### C. Fed. R. Civ. P. 12(c)

Defendants Oakland County and Diaz also seek judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Fed. R. Civ. P. 12(b)(c) provides that "after the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir. 2008) (citing JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation omitted)).

## IV. Discussion

As a preliminary matter, this court would note that, to the extent plaintiff requests a stay of any decision on these motions, his request should be denied. Pursuant to Rule 56(f), a party opposing a motion for summary judgment is allowed to state that he or she is unable to present facts essential to justify the party's opposition and, in that situation, the district court may permit further discovery so that the non-moving party can adequately oppose the motion for summary judgment. Wallin v. Norman, 317 F.3d 558, 564 (6th Cir. 2003). Fed. R. Civ. P. 56(f) has been referred to as a "carefully crafted" rule that serves as a vehicle through which the non-movant meets his "obligation to inform the district court of his need for discovery," Vance ex rel. Hammons v. United States, 90 F.3d 1145, 1149 (6th Cir. 1996), and the Sixth Circuit has

-11-

stressed the importance of complying with Rule 56(f)'s requirement through the use of

affidavits, as opposed to briefs: "[a] reference to Rule 56(f) and to the need for additional

discovery in a memorandum of law in opposition to a motion for summary judgment is not an

adequate substitute for a Rule 56(f) affidavit . . . and the failure to file an affidavit under Rule

56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was

inadequate." Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000) (quoting Evans v.

Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)).

"Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted

as requiring that a party making such a filing indicate to the district court its need for discovery,

what material facts it hopes to uncover, and why it has not previously discovered the

information." Cacevic, 226 F.3d at 488.  See also Wallin, 317 F.3d at 564 ("[i]t is up to the party

opposing the motion to state why more discovery is needed."); Abercrombie & Fitch Stores, Inc.

v. Am. Eagle Outfitters, Inc., 280 F.3d 619, 627 (6th Cir. 2002) ( "[T]he non-movant must file an

affidavit pursuant to Fed. R. Civ. P. 56(f) that details the discovery needed, or file a motion for

additional discovery."); Good v. Ohio Edison Co., 149 F.3d 413, 422 (6th Cir. 1998) (holding

that a party invoking Rule 56(f) protections must "affirmatively demonstrate ... how

postponement of a ruling on the motion will enable him, by discovery or other means, to rebut

the movant's showing of the absence of a genuine issue of fact") (internal quotation marks

omitted).  "Nebulous assertions that more discovery time would have produced evidence to

defeat summary judgment will be unavailing." Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir.

2003).

-12-

In this case, plaintiff meets neither the procedural or substantive requirements of Fed. R. Civ. P. 56(f). He did not file any affidavit and he offers no reason, beyond wanting a lawyer, as to why the court should delay ruling on these motions.

### A. Exhaustion of Administrative Remedies

As discussed above, defendants Sanilac County, Wayne County Jail, and Diaz argue that they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies against them prior to filing this lawsuit. Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq*., "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, 549 U.S. 199, 202, 127 S.Ct. 910, 914 (2007); Woodford v. Ngo, 548 U.S. 81, 85, 126 S.Ct. 2378, 2383 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). However, § 1997e does not impose a jurisdictional bar to federal jurisdiction, Curry v. Scott, 249 F.3d 493, 501 -503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the

-13-

filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute."  Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

**1. Sanilac County**

In support of its argument, Sanilac County provides the Sanilac County Sheriff Department's formal grievance procedure as an exhibit.  (Sanilac County Sheriff Department's Inmate Grievance Procedure; attached as Exhibit A to Sanilac County's Second Motion for Summary Judgment)  According the procedures outlined in that exhibit, a prisoner must first file a written grievance with a correction officer and the correction officer will then attempt to resolve the matter to the satisfaction of the inmate.  If the matter is not resolved, the grievance is forwarded to the Corporal.  The Corporal then confers with the inmate and, if the matter cannot be resolved to the satisfaction of the inmate, then the matter is forwarded to the Jail Administrator who will establish a final disposition for the grievance.

Here, plaintiff filed a grievance on June 20, 2006, complaining that he was not allowed to have contact visits with his family, and that he was only allowed to see his family through glass while communicating with them by a telephone.  (Inmate Grievance Form; attached as Exhibit B to Sanilac County's Second Motion for Summary Judgment)  There was no response provided by a correctional officer but, on June 21, 2008, a Corporal Moody reviewed the grievance and replied: "Mr. Pegross it is the policy of the Sanilac County Jail that all inmates are to have no contact visits.  This means local, state and federal inmates."  (Inmate Grievance Form; attached as Exhibit B to Sanilac County's Second Motion for Summary Judgment)  Corporal Moody did

-14-

not, however, fill out the section of the grievance form asking what he investigated and to whom

he was turning over the grievance.  (Inmate Grievance Form; attached as Exhibit B to Sanilac

County's Second Motion for Summary Judgment)

Defendant Sanilac County asserts that the grievance was never pursued further by

plaintiff after Corporal Moody rejected it and that plaintiff therefore failed to properly exhaust

his administrative remedies.  However, pursuant to the grievance procedure, it was the

Corporal's responsibility to forward the grievance to the Jail Administrator.  Moreover, the

grievance procedure does not provide a prisoner with any options where the Corporal fails to

forward a grievance to the Jail Administrator.  Plaintiff did all that the Sanilac County Sheriff

Department's grievance procedure demanded of him and, therefore, he should be deemed to have

properly exhausted his administrative remedies against Sanilac County prior to filing this

lawsuit.  Consequently, Sanilac County is not entitled to summary judgment pursuant to 42

U.S.C. § 1997e.

### 2. Wayne County Jail

In support of its argument, Wayne County Jail provides the section of the Wayne County

Jail Operations Manual detailing the formal grievance procedure as an exhibit.  (Wayne County

Jail Operations Manual; attached as Exhibit E to Wayne County Jail's Motion for Summary

Judgment)  According the procedures outlined in that exhibit, if an inmate is unable to resolve

his complaint through informal contact with staff, he must state his concerns in an "Inmate

Grievance Form" within ten (10) days of the date of the alleged incident of complaint.

-15-

Moreover, after a written response is completed, the inmate may appeal the answer to the "Director of Jails/designee" by checking the appeal box located on the grievance form.

In this case, plaintiff filed a number of grievances while detained at the Wayne County Jail and many of those grievances are the same as the allegations raised in plaintiff's complaint. (Grievances; attached as part of Exhibits A through R to Wayne County Jail's Motion for Summary Judgment)  However, while those grievances were responded to, and rejected, at the initial level (Grievance Responses; attached as part of Exhibits A through R to Wayne County Jail's Motion for Summary Judgment), it appears that plaintiff never appealed any of the rejected grievances to the Director of Jails or the Director's designee during the period November 22, 2005 through January 24, 2007.  (Affidavit of Starlit Smith, ¶ 6; attached as Exhibit S to Wayne County Jail's Motion for Summary Judgment)  As discussed above, plaintiff did not respond to Wayne County Jail's motion and he does not provide any evidence or argument with respect to his failure to appeal the grievances.  By failing to appeal any of the rejected grievances, plaintiff has failed to comply with the Wayne County Jail's critical procedural rules and, consequently, he did not properly exhaust his administrative remedies against Wayne County Jail prior to filing this lawsuit.  See Woodford, 126 S.Ct. at 2386.  Therefore, Wayne County Jail is entitled to summary judgment as to all of plaintiff's jails against it pursuant to 42 U.S.C. § 1997e.

**3. Diaz**

In support of his argument, defendant Diaz provides the Oakland County Sheriff's Office's formal inmate grievance procedure as an exhibit.  (Oakland County Sheriff's Office's Inmate Grievance Procedure; attached as Exhibit A to Oakland County and Diaz's Motion for

-16-

Summary Judgment)  According the procedures outlined in that exhibit, all grievances must be filed with a "supervisor" within fifteen (15) days of the alleged event/condition giving rise to the complaint and an inmate who is unsatisfied with the resolution of his grievance by the Corrections Shift Sergeant has five working days after receipt of the response to appeal the decision to the Corrective Services Captain.  The Corrective Services Captain has seven (7) working days to make a decision and the decision is final.  Moreover, the Corrective Services Lieutenant is required to keep a record of all grievances.

In this case, as indicated by the affidavit of Major Charles Snarey (attached hereto as Exhibit B), plaintiff was detained at the Oakland County Jail from August 26, 2006, to August 28, 2006, and, while he was detained there, plaintiff filed one written grievance.  (Affidavit of Charles Snarey; attached as Exhibit B to Oakland County and Diaz's Motion for Summary Judgment)  The grievance itself does not involve Diaz or any alleged assault by Diaz on August 25, 2006, and, instead, it only alleges that plaintiff's living conditions constituted cruel and unusual punishment and that certain deputies told plaintiff that plaintiff did not have a grievable issue with respect to those living conditions.  (Oakland County Jail Inmate Grievance; attached as Exhibit C to Oakland County and Diaz's Motion for Summary Judgment)

Given that evidence, which plaintiff does not dispute or contradict, no genuine issue of material fact is in dispute with respect to the exhaustion of administrative remedies and Diaz is entitled to judgment as a matter of law.  Plaintiff must properly exhaust his administrative remedies in order to satisfy § 1997e and, while the Oakland County Jail had specific grievance

procedures in place, plaintiff failed to comply with them or to even file a grievance with respect to his claims against Diaz.

### B.  Policy, Custom, or Practice

Defendants Sanilac County, Wayne County Jail, and Oakland County also argue that they are entitled to summary judgment on the basis that no genuine issue of material fact is in dispute with respect to municipal liability and they are entitled to judgment as a matter of law.  A municipality cannot be liable for the constitutional torts of its employees; that is, it cannot be liable on a respondeat superior theory.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); see also Powers v. Hamilton County Public Defender Com'n, 501 F.3d 592, 607 (6th Cir. 2007).  Rather, liability will attach only where the plaintiff establishes that the municipality engaged in a "policy or custom" that was the "moving force" behind the deprivation of the plaintiff's rights.  Monell, 436 U.S. at 694; see also Doe v. Claiborne County, 103 F.3d 495, 507 (6th Cir.1996) ("Under Monell, the [defendants] cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom ... leads to, causes, or results in the deprivation of a constitutionally protected right.").

The Monell Court described a municipal policy as including "a policy statement, ordinance, regulation, or decision officially adopted and promulgated...."  436 U.S. at 690.  An actionable "custom," in contrast, "has not received formal approval through ... official decisionmaking channels."  Monell, 436 U.S. at 690-91.  A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the

-18-

practice at issue.  Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis, 361 F.3d 898, 902 (6th Cir. 2004).  However, where a municipal-liability claim is premised on an "inaction theory," the plaintiff must prove (1) the existence of a clear and persistent pattern of violating federal rights (in this case, failing to request indigency hearings); (2) notice or constructive notice on the part of defendants; (3) the defendants' tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act can be said to amount to an official policy of inaction; and (4) that the defendants' custom was the "moving force," or direct causal link for the constitutional deprivation.  Doe, 103 F.3d at 508; see also Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005) (applying Doe factors where the plaintiff alleged that the Chattanooga police department had a custom of tolerating the use of excessive force against detained suspects); Garretson v. City of Madison Heights, 407 F.3d 789, 796 (6th Cir. 2005) (applying Doe factors where the plaintiff alleged that the city had a custom of failing to provide medical treatment to pre-arraignment detainees).

## 1. Sanilac County

As noted above, Judge Lawson previously dismissed all of plaintiff's claims against defendant Sanilac County except for the claim that the policy of not allowing contact visits with federal pretrial detainees is unconstitutional (D/E #36).  Judge Lawson did not rule on the merits of that claim and merely held that plaintiff had sufficiently alleged that a policy of Sanilac County caused a violation of his constitutional rights.

With respect to the merits of plaintiff's claim, the United States Supreme Court's decision in Block v. Rutherford, 468 U.S. 576, 104 S.Ct. 3227 (1984) is directly on point and, in

-19-

that case, the Supreme Court rejected plaintiff's argument.  In Block, the Supreme Court applied

Bell v. Wolfish, 441 U.S. 530, 99 S.Ct. 1861 (1979) to the Los Angeles County Central Jail's

policy of denying pre-trial detainees contact visits with their spouses, relatives, children, and

friends.  The Supreme Court reiterated that the due process clause forbids punishment of a

pre-trial detainee since such individuals have not been judged guilty of a crime, Block, 104 S.Ct.

at 3230, while holding that the jail's policy did not constitute punishment for purposes of due

process analysis, Block, 104 S.Ct. at 3233-34.  In making that ruling, the Supreme Court noted

that the district court had not found "that the purpose of petitioner's policy of denying contact

visitation is to punish the inmates" and that the rule was reasonably related to the security of the

jail.  Block, 104 S.Ct. at 3232.  The Supreme Court also noted that "we are unwilling to

substitute our judgment on these difficult and sensitive matters of institutional administration and

security for that of 'the persons who are actually charged with and trained in the running' of such

facilities."  Block, 104 S.Ct. at 3233 (citation and footnote omitted) (quoting Wolfish, 441 U.S.

at 562, 99 S.Ct. at 1886).  The Supreme Court further held that the district court had "simply

misperceived the limited scope of judicial inquiry under Wolfish.  When the district court found

that many factors counseled against contact visits, its inquiry should have ended."  Block, 104

S.Ct. at 3233.  See also O'Bryan v. County of Saginaw, Michigan, 741 F.2d 283, 284-285 (6th

Cir. 1984) (upholding Saginaw County Jail policy barring physical contact during visitation on

the basis of Block).

     Here, as in Block, it appears that Sanilac County has a strong interest in maintaining

security in its jail facility when it prohibits contact visits to pretrial detainees and that the policy

-20-

is not meant to punish inmates.  Moreover, as noted by Sanilac County, the policy does not prevent inmates from communicating with family and friends, but it does ensure that contraband will not enter the facility through these visits and that visitors and jail personnel will not be exposed to potential harm.

### 2. Wayne County Jail

Plaintiff makes numerous claims with respect to the time he spent in Wayne County Jail, including claims relating to the way deputies treated him, the condition of the various cells he was in and the property provided to plaintiff for living in those conditions, the adequacy of the law library, and the adequacy of any grievance procedure.  Plaintiff does not, however, expressly allege the existence of any specific policy that was the direct causal link for any constitutional deprivation.  Instead, he merely makes broad allegations regarding the conditions of his confinement while appearing to assume that the Wayne County Jail is liable for everything that goes on within its walls.  A complaint which fails to plead the existence of a custom, policy or practice should be dismissed.  Laise v. City of Utica, 970 F. Supp. 605 (E.D. Mich. 1997) (citing Fluellen v. U.S. Dept. of Justice Drug Enforcement Admin., 816 F. Supp. 1206 (E.D. Mich. 1993) and Foster v. Walsh, 864 F.2d 416, 419 (6th Cir. 1988)).  Plaintiff's claims against the Wayne County Jail could be dismissed on that basis here.

Plaintiff, as a *pro se* litigant, is accorded "the benefit of a liberal construction of [his] pleadings and filings," Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999), and, giving plaintiff the benefit of such a construction, it is possible that he alleged the existence of a policy, custom, or practice.  In its motion, Wayne County Jail argues that possibility that plaintiff alleged that

-21-

Wayne County Jail had a policy, custom, or practice of ignoring grievances and, to the extent plaintiff is deemed to have made such a claim, Wayne County Jail would be entitled to summary judgment on it.

As discussed above, the party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the nonmoving party's claim.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 f n. 12 (6th Cir.1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (other citations omitted).  The movant need not submit "affidavits or other similar materials negating the [nonmovant's] claim" and, instead, it need only identify portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  In this case, Wayne County Jail met its initial burden of demonstrating the absence of a genuine issue of material fact with respect to any claim that it had a policy of ignoring grievances by providing a copy of its Inmate Rules and Regulations, which explains the grievance process (Inmate Rules and Regulations; attached as Exhibit T to D/E #46), as well as a number of grievances that plaintiff filed and that were responded to (Grievances and Responses; attached as Exhibits A-1 through R).

By providing that evidence, Wayne County Jail met its initial burden of demonstrating the absence of a genuine issue of material fact with respect to any claim that it had a policy of ignoring grievances and the burden would shift to plaintiff.  As discussed above, plaintiff did not

-22-

file a response to Wayne County Jail's motion and, therefore, Wayne County Jail would be entitled to summary judgment as to any such claim.[5]

### 3. Oakland County

While, as described above, plaintiff makes numerous allegations in his complaint relating to events that occurred during his the three days he was detained in the Oakland County Jail, nowhere does he identify or allege that any policy, custom or practice of Oakland County caused a violation of his constitutional rights. By failing to identify such a policy, custom or practice and by failing to allege that any such policy, custom or practice caused a violation of his constitutional rights, plaintiff has failed to state a claim against Oakland County and Oakland County's motion for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)

### C. Fifth Amendment Claim Against Wayne County Jail

In addition to making the above arguments, defendant Wayne County Jail also argues that plaintiff's claim against it made pursuant to the Fifth Amendment to the United States Constitution must be dismissed because the Wayne County Jail is not a federal entity.

---

[5]If Wayne County Jail is not dismissed from this action, the court should order the case caption amended to substitute "Wayne County" for "Wayne County Jail" as a defendant in the matter because the Wayne County Jail is not a legal entity capable of being sued. See Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994), and Watson v. Gill, 40 F. App'x 88, 89 (6th Cir. 2002).

The Fourteenth Amendment's Due Process Clause[6] restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause[7] circumscribes only the actions of the federal government.  See, e.g., Scott v. Clay County, Tenn., 205 F.3d 867, 873-874 (6th Cir. 2000), Sturgell v. Creasy, 640 F.2d 843, 850 (6th Cir. 1981); Walker v. Hughes, 558 F.2d 1247, 1257 (6th Cir. 1977).  Therefore, plaintiff's allegation that his due process rights under the Fifth Amendment were violated should be dismissed.  However, as conceded by Wayne County Jail, its argument regarding plaintiff's Fifth Amendment claim does not affect plaintiff's invocation of the Fourteenth Amendment Due Process Clause.

**V. Conclusion**

For the reasons discussed above, the Court recommends that defendants' motions be **GRANTED** and that all of plaintiff's remaining claims be dismissed.  Sanilac County and Oakland County are entitled to dismissal because plaintiff failed to allege the existence of a policy, custom or practice that caused a constitutional deprivation.  Wayne County Jail and Diaz are entitled to dismissal on the basis that plaintiff failed to exhaust his administrative remedies against them prior to filing this lawsuit.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as

---

[6]The Fourteenth Amendment stipulates, in pertinent segment, that "No state shall ... deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1.

[7]The Fifth Amendment states, in material part, that "No person shall ... be deprived of life, liberty, or property, without due process of law [.]"  U.S. Const. amend. V.

-24-

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: May 20, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on May 20, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

-25-